JOSEPH C. HAMMOND, JR., *vs.* THE HAMMOND BUCKLE COMPANY.

First Judicial District, Hartford, May Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The plaintiff sued upon the common counts to recover for services and disbursements as the alleged manager of the defendant corporation, after he and his associate stockholders had sold all the capital stock of the company to *B*, who upon the following day turned substantially all of the stock over to the United States Rubber Company, of which he was the president, at the price for which he obtained it. There was no official record of the sale to *B*, or of the plaintiff's employment as manager of the defendant, but the plaintiff claimed that at the time of *B's* purchase the latter orally agreed with him that he might continue as general manager, and that the defendant had ratified and confirmed this agreement. *Held:—*

1. That it was within the discretion of the trial court to admit evidence of what the plaintiff actually did and paid after the sale to *B*, as one step in the proof of his case, leaving the question of his authority to act or pay in behalf of the defendant, to be proved afterwards.

2. That the ruling that evidence of *B's* purchase and employment of the plaintiff was admissible provided it should be shown later on that this employment was ratified by the defendant, was correct; but that *B's* statements about other matters, made at the same interview, were inadmissible.

3. That a letter from *B* to the plaintiff, written after *B* had turned the stock over to the Rubber Company, stating what he had done and desired to have done concerning the business, was hearsay and

inadmissible; as also an extract from *B*'s annual report as president of the Rubber Company, to the effect that the plaintiff was "now the manager" of the defendant.

4. That extracts from the records of the Rubber Company, so far as they tended to show anything but its purchase of the defendant's stock—a matter about which there was no dispute—were inadmissible as hearsay.

5. That evidence that the volume and profits of the defendant's business had largely increased during the time for which the plaintiff claimed to recover, was inadmissible, because no attempt was made to show that the increase was in anywise due to the plaintiff's services.

The plaintiff on his direct examination was allowed to state that he was the inventor of a buckle and had been in the buckle business about nineteen years. *Held* that this was merely preliminary and harmless to the defendant; and, moreover, was relevant to the question of the value of the plaintiff's services, should a recovery be claimed under a *quantum meruit*.

Argued May 2d—decided August 1st, 1899.

ACTION to recover for services and disbursements as manager of the defendant company, brought to the Superior Court in Tolland County and tried to the jury, before *Ralph Wheeler, J.;* verdict and judgment for the plaintiff for $1,321, and appeal by the defendant for alleged errors in the rulings and charge of the court and in its denial of the defendant's motion for a new trial for a verdict against evidence. *Error in rulings on evidence, and new trial granted on that ground only.*

The complaint contained the common counts only. The bill of particulars filed was as follows : —

"To railroad car fare while in employ of defendant, 17,694 miles travel, at 2 cents per mile, from November 14, 1893, to January 15th, 1896 . . . . . $353 88

"To services as general manager, 11½ months, to April 16th, 1897, at $208.33⅓ per month 2,395 84

"To salary advanced to C. H. Hammond, bookkeeper, from November 14th, 1893, to January 1st, 1895, 13½ months, at $60 per month 810 00

$3,559 72 "

The first defense was a general denial; the second was in effect payment, which was denied in the reply.

On the trial the plaintiff offered evidence tending to prove, and claimed to have proved, among others, the following facts : The defendant is a joint stock corporation organized in 1889, under the laws of this State. The plaintiff was one of the original incorporators, owning 95 of the 200 shares of its stock, and the others were his son C. H. Hammond, who owned 5 shares, and Samuel A. Chapman, who owned 100 shares. The stock was owned by these three in this way down to November 14th, 1893. The plaintiff was the treasurer of the corporation from its organization until April 23d, 1896, when his son above named was appointed treasurer.

The plaintiff was the inventor of what is known as the "Hammond buckle," which the defendant manufactured and sold in various grades, styles and forms.

On November 14th, 1893, Joseph Banigan, president of the United States Rubber Company, made a proposition to the stockholders of the defendant to purchase their entire stock for $50,000. The stockholders then and there accepted this proposition. This proposed purchase included all the property and good will of the defendant, save the book accounts. At this interview it was arranged between Banigan and the stockholders, that the business of the defendant should go on as before, and that the plaintiff should be continued in the employ of the company both as treasurer and as general manager. It was stated by Banigan at that interview, that he might offer the stock and property of defendant to the United States Rubber Company at the same price he had paid, and if that company did not care to take it he would hold it as his own and continue the business in his own interest. On the 15th of November, 1893, Banigan reported his purchase to the United States Rubber Company, explained the arrangement he had made with the plaintiff for a continuation of the business, and offered his purchase to that company at the price he had agreed to pay. The United States Rubber Company on the same day accepted this proposition. When he made the proposition of Novem-

ber 14th, 1893, to the defendant's stockholders, Banigan acted for himself alone, and he was, for a short time, by the acceptance of his proposition, the sole owner of the stock and property of the defendant; and it was during this time that it was arranged that the plaintiff should go on as treasurer and general manager of the defendant. In accepting Banigan's proposition made to the United States Rubber Company on November 15th, 1893, that company accepted it subject to the terms and arrangement made with the plaintiff, and ratified all that Banigan had done in the premises. At the request of Banigan the holders of the defendant's stock transferred their shares directly to the United States Rubber Company as follows : Samuel A. Chapman, 97 shares, the plaintiff, 91 shares, C. H. Hammond, 2 shares ; so that after such transfer the Rubber Company owned 190 shares, while Chapman, the plaintiff, and C. H. Hammond appeared to own 3, 4, and 2 shares, respectively. These transfers appear on the books of the defendant as made November 15th, 1893. The price of $50,000 was paid by the Rubber Company to the defendant's stockholders. The entire arrangement and agreement of November 14th, 1893, between Banigan, the plaintiff, and the stockholders of the defendant, was a verbal one, of which no official record or memorandum exists. At the annual meeting of the stockholders of the defendant held in January, 1894, the plaintiff was elected one of its directors, and on the same day, at a meeting of the directors, was elected as treasurer of the defendant. At this meeting the oral arrangement made by Banigan in November, 1893, by which the plaintiff was to continue to act as general manager as well as treasurer, was reported orally to the stockholders and directors. The plaintiff was again elected as treasurer of the defendant in January, 1895.

After November 14th, 1893, the plaintiff continued to perform all the duties of treasurer, and all the duties incident to the position of general manager, of the defendant, until April 23d, 1896, when his son C. H. Hammond was appointed treasurer in his stead. Thereafter until April or May, 1897, the plaintiff continued to perform many of the duties incident

Hammond *v.* Hammond Buckle Co.

to the position of general manager as before, and wrote divers letters relating to the business of the defendant which he signed as general manager. The plaintiff was paid nothing by the defendant after April 23d, 1896, when his son took the position as treasurer, and has not been paid for any of the items named in the bill of particulars which he offered evidence to prove, and claimed he had proved, were due to him from the defendant.

The defendant offered evidence tending to prove and claimed it had proved, that the plaintiff was not in the employ of the defendant after April 23d, 1896, as general manager or otherwise; that the defendant did not owe the plaintiff anything for mileage as claimed by him; and that it owed him nothing under the third item of his bill of particulars. The jury returned a verdict for the plaintiff, upon which judgment was subsequently rendered.

The defendant made a motion below for a new trial, on the ground that the verdict was against the evidence in the cause. The court denied the motion and from that denial the defendant appealed. He also appeals on the ground that the court below erred in its rulings upon evidence and in the charge to the jury.

The rulings upon evidence, both oral and documentary, are set forth at great length upon the record. The following are the principal rulings with reference to the admission of documentary evidence: The plaintiff offered in evidence a letter dated November 17th, 1893, from Banigan to himself, of which the following is a copy: —

"PROVIDENCE, Nov. 17, 1893.

" Mr. J. C. HAMMOND, Jr.

" Dear Sir: On arriving in New York Tuesday night the sad fate of our Mr. P. J. Conley upset me to some extent, but as per arrangement the United States Rubber Company's Executive met at 10 o'clock Wednesday morning, and I presented to them the fact that I had bought the Chapman and Armstrong interests and the land, buildings, machinery and all appliances for the making of buckles. This would be

turned over to the Hammond Buckle Company and then all the stock of the Hammond Buckle Company turned over to me for the sum of $50,000—and all the stock raw, wrought and in process was to be sold to me at net cost and I offered it to the United States Rubber Company at that price. I offered to carry it myself and give them all the buckles they wanted for the companies in which they were interested at a net cost price plus 10 per cent. for the manufacturing profit, they, however, decided to buy the property for the $50,000— so to that end I telegraphed you on Wednesday. Please have the account of stock taken as early as possible as you, of course, know that at the end of business Tuesday night the property was mine so that any buckles shipped after Tuesday night or sold were shipped or sold for my account and the property should be turned over to me as of that date and I in turn will transfer it to the United States Rubber Company; if they elect to do otherwise they may take the stock of the Hammond Buckle Company direct. Let no stoppage take place but with as little delay as possible have the whole business of Chapman and Armstrong turned over to the Hammond Buckle Company and call on me for the money as soon as you require it. Let Chapman and your good self figure out what will be necessary for the production of sufficient buckles to fill the wants of those companies and order sufficient machinery to produce the same. I have handled the salary situation and it is agreeable that you be paid $2,500—Chapman $1,500 and your superintendent $2,000 a year.

" I send a copy of this letter to Mr. Chapman that he may be thoroughly acquainted with the matter so as to avoid any misunderstanding that I came into possession of the property on Tuesday night the 14th inst. Yours respectfully, Joseph Banigan."

The defendant objected to this, on the ground that it was hearsay and was immaterial and irrelevant, but the court admitted it.

The plaintiff offered in evidence, as Exhibit F, an abstract from the minutes of the meeting of the executive committee of the United States Rubber Company, held November 15th,

1893, showing the proposition made by Banigan to said committee for the purchase on behalf of the Rubber Company from him of the property and stock of the defendant, and the acceptance of the proposition by the committee; also extracts from the minutes of a meeting of the board of directors of the United States Rubber Company, held December 6th, 1893, as Exhibits G and H, approving and ratifying the above action of the executive committee; also, as Exhibit I, an extract from the minutes of the annual meeting of the stockholders of the United States Rubber Company, held April 17th, 1894, showing an approval and ratification of the action of the executive committee and directors of the corporation in making said purchase. The defendant objected to the admission of each of these exhibits as immaterial and irrelevant, but the court admitted them. The plaintiff also offered in evidence, as Exhibit R, an extract from the annual report of the president of the Rubber Company to its stockholders at the annual meeting in April, 1894, of which the following is a copy: —

" As the product of all of our factories on arctics, lumberman's, etc., on which buckles are used, it so great, it was considered a decided advantage for the United States Rubber Company to own its own buckle business. We have therefore become large stockholders in the Hammond Buckle Company, of Rockville, Conn., of which Joseph C. Hammond, Jr., was and is now the manager, so that we now get our buckles at the cost thereof."

The defendant objected to the admission of this exhibit on the ground that it was hearsay and was immaterial and irrelevant, but the court admitted it. The defendant duly excepted to each and all of these rulings. The other rulings upon evidence complained of are sufficiently stated in the opinion.

*Henry Stoddard* and *Joel H. Reed*, for the appellant (defendant).

*Charles Phelps*, for the appellee (plaintiff).

TORRANCE, J.   The claimed errors in the rulings upon evidence will be first considered.    They are eighteen in number but it will not be necessary to consider them all separately. They will be considered substantially in the order of statement in the reasons of appeal.

Upon his direct examination the plaintiff was permitted to state, in substance, that he was the inventor of a buckle and that he had then been in the buckle business about nineteen years.   The defendant complains of this, and we think without reason.   At most it was a preliminary matter and certainly did the defendant no harm; but it was clearly admissible as bearing upon the value of plaintiff's services under a *quantum meruit*, if it became necessary to make that claim.

One of the strongly contested points in the case was whether the plaintiff had ever been appointed or employed·by the defendant after November, 1893, as its general manager. With a view to prove that he had been so appointed or employed, the plaintiff was asked the following question: "At whose instigation or solicitation did you enter upon the duties as treasurer and general manager of the Hammond Buckle Company on November 14th, 1893?"   This and several other questions of similar form were, upon objection, withdrawn before answer, because, as defendant claimed, they assumed without proof that the plaintiff had been treasurer and general manager of the defendant.   The court then suggested that plaintiff should be asked what he did for the defendant in 1893 and onwards, and afterwards show how he came to perform those duties.   The plaintiff was then asked, in substance, to state in detail what he did for the defendant from November 14th, 1893, onwards, and he did so at some length. This was claimed and admitted against the defendant's objection, for the purpose of showing the duties incident to the position of general manager, and what plaintiff actually did. Later on the plaintiff was asked this question: "Passing to the second item of the bill of particulars, which speaks of services as general manager for eleven and one half months to April 16th, 1897; were those months immediately prior to April 16th, 1897?"   This was finally changed and asked in

this form: " What were you doing during the 11½ months preceding April 16th, 1897?" The defendant objected to this on the ground, substantially, that it assumed without proof that the plaintiff had been employed during this period by the defendant. The court overruled the objection and admitted the evidence. The witness answered, in substance, that he managed the business, sold goods, made contracts in behalf of the defendant, looked after its interests the best he knew how, and directed and advised in the management of the business. The plaintiff was then asked concerning the third item of his bill of particulars this question : " Did you pay any money to H. C. Hammond the bookkeeper?" The defendant objected to this, because there was no authority shown in him to pay money to the bookkeeper. The objection was overruled and the witness answered that he did, and stated the amount he had so paid.

We think in each of these three instances the ruling was correct. It was within the discretion of the court to permit the plaintiff in this way to show what he actually did, and what he actually paid, as one step in his proof, leaving the question whether he was authorized or employed to act, or pay, expressly or impliedly by the defendant, to be proved later on.

The plaintiff claimed that by an oral agreement between Banigan and all the stockholders of the defendant, made and consummated on the 14th day of November, 1893, Banigan became and was the sole owner, for a short time, of the property and stock of the defendant corporation ; that on that day, and while Banigan was thus sole owner of the property and stock, Banigan verbally employed the plaintiff to go on with the business of the defendant as treasurer and general manager ; that at Banigan's request the plaintiff did so ; and that this action of Banigan in thus employing the plaintiff was ratified by the defendant at its next annual meeting in January, 1894. There were no official written *memoranda* of any kind of this purchase or of this employment. The defendant objected to any and all evidence of this purchase by Banigan, and of the employment of the plaintiff by Banigan

as treasurer and general manager. The court ruled, in effect, that evidence might then be given of said purchase and employment on the 14th day of November, 1893, on condition that it should afterwards be shown that what Banigan did in employing the plaintiff was ratified by the defendant. The plaintiff then testified in substance that he was on said day, while Banigan was sole owner as aforesaid, employed by Banigan as treasurer and general manager of the defendant, and that he then and there began and thereafter continued to perform the duties incident to said positions.

We think the evidence of this purchase and employment was conditionally admissible as held by the court, for what it was worth upon the disputed question as to whether the plaintiff had ever filled the position of general manager, which latter question had some slight bearing upon the further question as to whether the plaintiff had, with the express or implied authority of the defendant, performed the duties of general manager after April, 1896, when he ceased to be treasurer. But what Banigan said at this same interview about other matters outside of the transaction of purchase and employment, to which the plaintiff, against the defendant's objection, was permitted to testify, was clearly not admissible, although it probably did the defendant no harm.

The letter from Banigan to the plaintiff of November 17th, 1893, was clearly inadmissible. It was written after Banigan had ceased to be the owner of the stock and property of the defendant; it was a statement of what he had done, and what he desired to have done, concerning matters irrelevant and immaterial; and it was mere hearsay evidence. The fact that Banigan was dead when it was offered in evidence did not make it admissible in this case.

The extracts from the records of the executive committee, and from the records of the directors and stockholders' meetings of the United States Rubber Company, were also inadmissible, because they were immaterial and irrelevant. They all went merely to show that the Rubber Company had become the owner of stock of the defendant, a fact about which there was no dispute, and which sufficiently appeared from the books

of the defendant, which furnished the proper evidence of that fact. So far as these extracts afforded evidence of anything else the evidence was mere hearsay.

The extract, Exhibit R, from the annual report of the president of the Rubber Company, made in April, 1894, was manifestly offered because it contained a statement that the plaintiff was "now the manager" of the defendant. This was clearly hearsay evidence and should have been excluded.

The plaintiff and his son were both allowed, against the objection of the defendant, to testify, in substance, that the business and profits of the business had largely increased between November 15th, 1893, and the time when the plaintiff ceased his connection with the defendant. This was admitted as bearing upon the value of the services of the plaintiff upon a *quantum meruit*, if it became necessary to make such a claim.

This evidence was inadmissible, unless it was also shown that the claimed increase was due in whole or in part, or in some way, to the services of the plaintiff, and no attempt was made to show this. We think the court erred, as the matter stood, in permitting this evidence to go to the jury. Because of these several erroneous rulings upon evidence, we think the defendant is entitled to a new trial. In this view of the case it becomes unnecessary to state or consider the claimed errors relating to the charge of the court to the jury.

With reference to the appeal from the action of the court below in denying the defendant's motion for a new trial, we are of opinion that the court did not err in denying that motion. Upon the other appeal there is error and a new trial is granted.

In this opinion the other judges concurred.